**WELLMAN et v EBERLY et**

Ohio Appeals, 2nd Dist, Franklin Co

No 2810. Decided Oct 7, 1937

Chester, Keyser & Stouffer, Columbus, for plaintiffs-appellees.

Henry J. Linton, Columbus, for defendants-appellants.

**OPINION**

By BARNES, PJ.

The above entitled cause is now being determined on an appeal on questions of law by the defendants from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The following brief summary of facts will render understandable the nature of the controversy and the manner in which the claimed errors arise.

On April 28, 1925, the defendant, Virgil A. Eberly and Mildred F. Eberly, husband and wife, executed to R. B. Dickey their promissory note in the sum of $4000.00, payable in three years after date, with interest, etc. This note, among other things, contained a cognovit clause whereby judgment might be confessed through power of attorney. At the same time that the note was executed there was also executed in due form a mortgage, to secure the note, on certain described premises in the city of Columbus, Franklin County, Ohio. The note bears an endorsement of R. B. Dickey in blank and Frank M. Pontius in blank; also the endorsement of interest payments as follows:

| | |
|---|---|
| October 22, 1928 | $140.00 |
| June 16, 1930 | 200.00 |
| March 3 | 35.00 |

On April 30, 1936, plaintiff-trustee took a cognovit judgment against the defendants, Eberlys, in the Court of Common Pleas of Franklin County, Ohio, in the sum of $6170.34, claimed to be the total amount of principal and interest then due. The plaintiffs were trustees of a number of Columbus financial institutions, the latter having taken over for liquidation the assets of the Columbus National Bank of Columbus, Ohio. Among the assets of this defunct bank was the note and mortgage in question.

Following the taking of judgment by the plaintiff defendant sought and obtained a suspension of the judgment with a right to file answer and defend, under the claim

that the note was procured by fraud and that the plaintiffs were not bona fide holders as that term is defined in the statute.

The defendants, Eberlys, in support of their contention, made the following claims: Sometime prior to 1928 the Eberlys contacted one Frank M. Pontius, who was a real estate broker. The Eberlys had a property in Akron, Ohio, which they desired to sell or exchange for a property in some other location. Pontius showed them a property in Columbus. The Akron property and also the Columbus property had mortgages against them. A deal was finally consummated which in effect meant a trade of equities. The existing mortgage on the Columbus property amounted to $3050.00. The same was either due or would fall due at the time of or shortly after the consummation of the deal. Eberlys claimed that Pontius agreed, without expense to them, to find some one who would re-finance the mortgage, since they would not be able to pay it in cash when due. The Eberlys made the further claim that Pontius' conduct was fraudulent in the following respects:

(1) That the mortgage for $3050.00 on the premises at the time they acquired it was with a mythical person;

(2) That Pontius falsely represented that R. B. Dickey, whom he had originally stated was a representative citizen who would re-finance the mortgage, was either a mythical person or a colored janitor without financial resources;

(3) That Pontius falsely represented that R. B. Dickey was demanding a $750.00 bonus before he would re-finance the loan;

(4) That Pontius also fraudulently and in violation of his original promise, demanded a commission of $200.00 for himself for securing the individual to re-finance the loan.

We have in the main stated the claimed fraudulent conduct of Pontius, but possibly there are others not necessary to detail.

It was the position of plaintiff, as set forth in its reply, that The Columbus National Bank acquired the note in question on December 14, 1928; that at that time the note was not due; that the said Columbus National Bank paid value for the note; that the Bank, its officers, agents and employees, had no knowledge of any of the claimed infirmities as contained in defendants' answer. As a second defense, there was a general denial. The reply also contained a third defense which we do not think is essential to the determination of the present question. The law involved is well defined and the only question is its application.

The note in question was introduced in evidence and is regular in form. No infirmity appears on its face.. There was evidence presented through the testimony of one Albert E. Binder, who was manager and secretary of the Columbus Clearing House Association. According to his testimony, in earlier years he had been a bank examiner. He gave evidence that he had examined the Columbus National Bank on several occasions prior to it being taken over by a group of banks in Columbus. Also that he had in his possession the memoranda or notes of his examination and that he found the Eberly note referred to in the action in the possession of the Columbus Bank as collateral security for the loan of Pontius. The time of the examination was prior to the note becoming due. There was also evidence that the bank made a loan to Pontius on December 12, 1928, in the sum of $2800.00 and that this together with pre-existing loans amounted to as much or more than the collateral security. The trial court in passing upon the question as to whether or not the plaintiff was a holder in due course made the following statement:

"Assuming without deciding that Pontius perpetrated such fraud upon the defendants as would vitiate the note does the evidence and by a preponderance thereof show that the Bank in good faith became the holder for value before maturity and without knowledge of the fraudulent representations?"

We will accept the statement of the trial court as our premise and proceed to the determination as to whether or not under the state of the record it may be said that the plaintiff was holder in due course. Certain sections of the Negotiable Instrument Act are pertinent. First we quote §8157, GC:

"Sec 8157 GC. WHAT CONSTITUTES A HOLDER IN DUE COURSE.—One is a holder in due course who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it previously had been dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person neotiating it."

We also quote §8161, GC:

"Sec 8161 GC. WHAT CONSTITUTES NOTICE OF DEFECT.—To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Also, §8163, GC:

"Sec 8163 GC. WHEN SUBJECT TO ORIGINAL DEFENSES.—In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the right of such former holder in respect of all parties prior to the latter"

Sec 8164, GC, is very important to the present inquiry, and we also quote it in full:

"Sec 8164 GC. WHO DEEMED HOLDER IN DUE COURSE.—Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. The last rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It is the contention of counsel for the defendants that plaintiff failed to prove that it had notice of the claimed infirmities in the note. The only evidence directly touching this question was that of Frank M. Pontius. He presents evidence that in December of 1928 he endorsed and turned over to the Columbus National Bank the note in question as collateral security for a loan made to him by said bank. He also gave evidence as to the manner in which he became the owner of the note. It was his claim that the refinancing was in reality made by Minnie McCartny, but that the name of R. B. Dickey was used for the reason that Mrs. McCartny did not want it to appear that she was making the loan. It appears in evidence that on certain interest payments the check was made to Mrs. McCartny. However, her name appears nowhere in either the note or mortgage. Pontius says that he became the owner of the note by reason of a real estate transaction and that the note was turned to him by Mrs. McCartny in closing up the deal. R. B. Dickey had endorsed both notes and mortgages in blank. Mr. Pontius was inquired of as to the name of the officer or employee of the Columbus National Bank that he dealt with when turning over the Eberly note as collateral. He gave the name of a Mr. Leyshon. Pontius testifies that at no time did he make any statement to Mr. Leyshon as to the consideration for the note or how it was acquired.

The defendants, Eberlys, presented no evidence touching the question of knowledge of the Columbus National Bank of any of the claimed infirmities. It clearly appears that the Eberlys did not themselves know of the claimed fraudulent conduct of Pontius until sometime in 1936. This was about the time the note was placed in judgment. For some reason, Leyshon, the individual with whom Mr. Pontius claims he negotiated a loan, was not called as a witness. There was evidence that many of the old employees of the Columbus National Bank had left the city and were not available as witnesses. Nothing was said specifically as to Mr. Leyshon. And so from the record we are unable to say whether or not his testimony might have been procured. It is urged that even if full credit is given to the testimony of Pontius as to his conversation with Leyshon, there still is the remaining question as to whether or not the bank might have knowledge of the infirmities of the note from other sources. The trial court recognized the correctness of this claim but decided against the contention of the defendants on the theory that it was improbable that the bank would have made the loan to Pontius and accepted the $4000.00 note as collateral had they possessed any knowledge of the claimed infirmities. Counsel for the defendants, Eberlys, urge that such ruling can not be sustained for the reason that under the provisions of §8164, GC, the burden is upon the plaintiff to prove that it or the Columbus National Bank was a holder in due course. Counsel for defendant in support of their position cite the following Ohio decisions:

Regan v Sherman, 1 Oh Ap 273.

Thompson v Bank, 32 O.C.C. 131 (13 O. C.C. (N.S.) 515).

Kuchenbacher et v Gill, 18 Oh Ap 535, (33 O.C.C. (N.S.) 192).

Traders Security Co. v Clay, 11 Abs 315. Each of these cases is in point and tend to support defendants' position.

We have made an independent research and think by analogy of reasoning the Supreme Court of Ohio has decided the principle that is controlling in the instant case. We were led to this investigation by reason of the first part of §8164, GC, which reads as follows:

"Every holder is deemed prima facie to be a holder in due course.".

On first impression it might seem that the later provision in this section which casts a burden upon the holder to prove that he is a holder in due course, either abrogates the prima facie status or is inconsistent therewith. It seems to us that the proper analysis of the █ section would be to say that in the absence of any evidence the prima facie provision would be sufficient to sustain the burden of proof cast upon the holder where an infirmity is shown as between the original parties to the note. Of course the burden is upon the holder claiming to be a holder in due course and that burden never shifts. The prima facie case may or may not be sufficient to sustain plaintiff's burden, depending upon the evidence presented. We find that the Legislature has used a similar expression in another section of the Negotiable Instrument Act. We refer to §8129, GC, and herein quote same in full:

"Sec 8129 GC. PRESUMPTION OF CONSIDERATION—Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

The courts have repeatedly held that the burden of proving consideration rests upon the plaintiff. But if no question is raised through the evidence, if the instrument is regular upon its face, the prima facie provision of the Code is sufficient to support the burden as to consideration. The Supreme Court of Ohio in the case of Ginn, Admr. v Dolan, 81 Oh St 121, had under consideration the question of consideration and what is now §8129, GC. The

first syllabus of the case reads as follows:

"Where in a suit upon a promissory note the defense is that the note was given or obtained without a valuable consideration, the plaintiff has the affirmative of the issue and the burden of proof rests upon him, at every stage of the case, to show a consideration for the note, by a preponderance of the whole of the evidence adduced on the trial."

In the opinion of Davis, J., p. 127, we find the following:

"The weight of the evidence, or as it is otherwise expressed, the preponderance of the evidence, may vary from side to side as a trial progresses; but the burden, which rests upon the plaintiff to establish the material averments of his cause of action by the preponderance of all the evidence, never shifts. The party who maintains the affirmative of an issue carries the burden of proof through the whole case, although he may be aided by such a rebuttable presumption of law, or such facts, as would prima facie support his contention. His opponent need do no more than counterbalance the presumption, or prima facie case. It is not necessary that the petition should in terms contain the averment that the note was based on a valuable consideraion because that is presumed; but when consideration is denied in the answer there is an issue made upon that point, on which the plaintiff has the affirmative, and, the presumption being prima facie only, and not conclusive, the burden of proof necessarily rests upon the plaintiff to show a consideration by a preponderance of the whole evidence given on the trial of the issue."

The only distinguishing features that we can observe in the section under consideration in the instant case and that considered by the Supreme Court in the reported case is that in §8164, GC, the Legislature prescribes the rule of proof, whereas §8129, GC, makes no such provision. We can not see that this is important for the reason that the courts have universally held the rule to be identical on the question of consideration. Applying this rule of law to the instant case we think that the prima facie provisions of the first █ part of §8164, GC, taken in connection with the testimony of the witness Pontius, furnishes the requisite proof in support of plaintiff's case. Of course in so determining we take

468

into consideration that no evidence was presented tending to overcome plaintiff's prima facie case. The judgment of the trial court will be sustained and the case remanded for further proceedings according to law.

HORNBECK and GEIGER, JJ, concur.